When will Mr. Alton Howe appear on behalf of the petitioner and appellant to milk in this kingdom? Your Honor, this is a case where Mr. Kingham is, of course, attempting to get into court, to have the judge hear his petition for rid of habeas corpus. He has two hurdles that are relevant, I think, this morning. There's Rule 68.6, under which he sought to reopen the hearing as to whether he is entitled to equitable tolling. And then there's equitable tolling itself. Of course, the Supreme Court's recently decided the case of Holland v. Florida on the latter point, which I think is quite significant because it appears to represent a seat change in the way in which the Supreme Court views equitable tolling in the AEDPA cases. Clearly, the Eleventh Circuit bar was much too high, which would have really held the attorney for an attorney's negligence ever to justify equitable tolling. It had to be so egregious as to be misconduct, as to be dishonesty in a conflict of interest. The Supreme Court said the bar was much too high. But in doing so, I think the important thing is less the facts of Holland, Your Honors, than the way in which Justice Breyer approached equitable tolling in this area. He made clear, I think the Court made clear, that the one-year bar, the one-year statute of limitations is not jurisdictional. It is thoroughly subject to equitable considerations. And that the Great Rift that governs the Hague's Corpus was not meant to be undermined or unduly restricted. Congress was wanting to avoid unnecessary delay and abuse of the Rift. Let's give your client the benefit of a doubt for purposes of the argument. Let's take it under 60A6. Don't you still have the same problem? You've got a counsel who apparently missed the deadline because he misread the statute, according to the evidence as I understand it. And if that's the case, even under Holland, a garden variety in quotes attorney negligence such as simple miscalculation does not warrant equitable tolling. How did the district court get it wrong, even if you look at it under 60A6? I think that the, I think that the district court didn't give, I think they gave inappropriate consideration to the correspondence submitted between Holland, excuse me, between the king and his family, kingdom and council. The judge agreed that contrary to her original inclination, he had an illness. But she said that the correspondence indicated that the attorney was actually attentive and was merely negligent. Therefore, this was corresponding and he wasn't committing a fraud or anything like that. But again, I think that what it shows me is that the attorney described Holland time years before this for the purpose of what's to be the case. Don't we review this based upon abuse of discretion in this case, though, counsel? It's an equitable remedy, is it not? So the district court looked at the correspondence, concluded that there was ordinary negligence here, that the attorney basically confessed that he misread the statute. What's wrong with that? The reason I think that it was wrong, Your Honor, is that what is shown, I think, in the excerpts of record, pages 18 through 56, is the correspondence in question that Your Honors have or can observe and consider. We argue that that reveals that more than the simple misreading of the statute, the client was very engaged and wanted to make sure that his family was heard. And that's all counsel really had to do in this situation was make sure he was fun on time. Let's concede all of that. Let's say that's true. The poor district judge is doing the best in this case, I think, he. Is that correct? She, sorry. I get mixed up with so many of these cases. In this case, she was doing the best she could. She reviewed the evidence, considered it, understood what was trying to be accomplished, and yet there's this correspondence that indicates that the attorney just acknowledges that he misread the statute. That's ordinary negligence. It happens all the time. Why did the district court abuse its discretion under those circumstances? The district court, in fact, was operating under a pre-Holland approach to it. I think that the district court was putting too much of a burden. Holland didn't change that, did it, counsel? Well, I think it did because, Your Honor, I know that you, which does talk regarding variety of attorney negligence. I completely agree. But the approach it takes to habeas and to equitable remedies is more expansive than the district court is willing to extend in this case. I mean, after all, what counsel did was not just miss the deadline. Counsel repeatedly assured the client and his family that he was proceeding in pace. He told them what had applied. All he had to do, and I want to emphasize this, if I may, all counsel really had to do was make sure that was filed in time. The issue had been preserved and federalized in state court by the same lawyer. So the great trap that a lawyer has to avoid is exactly this one. Get it filed on time. And the family wanted him to, and he just didn't. He said he had personal issues in his own life, and therefore he didn't get to it. But I think in several cases this Court has kind of rejected that as a reason. If you repeatedly miss the thing, misinform the client, miss it by a long time, depending on how you compute it, either a year, two years, or more, it wasn't just a simple filing error. It was a very significant error to the heart of the counsel's obligation. Therefore, I think it was a grievous misconduct in this case. Could not be said, though, about every garden variety miscalculation. I mean, the state courts are filled with missed statutes of limitations, and attorneys have ‑‑ it ruins the case. I mean, it can be a terrible, terrible thing for the clients represented, but it is nonetheless a garden variety miscalculation of the statute of limitations. And I'd love to have you be able to help me, but I don't see why this is different. Well, that could be said, couldn't it, though, of Spitzen or of the other cases that have been decided by this and other courts where they have extended equitable tolling because of attorney error. I mean, which garden variety and what's egregious obviously is a case-by-case situation. It's very difficult to draw a picture from another case at some point. But I think what we get here, I think it's egregious because it's a repeated error. It's error in the face of counsel's repeated assurances that he wants it done properly. It's an error that there's no reason for, really, because the counsel's only real obligation at this point is to get it done on time. I think that the garden variety mistake would be where you miscalculate the thing and you just take a look at it and you say, well, it's not due until such and such a time. But I think it's different when you do that repeatedly over a long period. I just think across the line, egregious conduct, particularly when we're talking about equitable remedy and we're talking about, man, this is his only chance to have a court and have a life sentence without parole. What do we do with the proposition that the defendant is not entitled to counsel necessarily? He's not obligated to have counsel in a habeas situation. And so he still retains some obligation himself, does he not? Like, for example, when he sees that Grinch isn't doing the job, to fire him and proceed on his own or get somebody else. He's not entitled to counsel, Your Honor. He definitely inhabits constitutionally. But we're not saying that the ineffectiveness of counsel is an independent violation. He's saying that counsel's gross negligence or egregious conduct is the reason he missed the deadline. And Kingdom did take some obligation on himself to get it done, but then he had a lawyer telling him when it was due, wrongly, when he was focusing on that issue. So I think that's where the counsel's ineffectiveness comes into play, Your Honor. The reason that the defendant is not entitled to counsel is not an independent violation. It's a reason, an extraordinary reason, to grant equitable relief. Do you want to save any of your time for rebuttal? I'd like to. Very good. In fact, we'll now hear from Mr. Ott for the State. Good morning. Gregory Ott from Respondent and Police Department. Unless the court has any questions on the B-2 question, I will address the points raised by appellant. This was, other than the miscalculation by counsel, an ordinary representation. The letters document normal correspondence between a client and a defense counsel. He corresponded with them at each level. He sends them a copy of the petitions he's filed, the orders that he's received, all the way through, even through the Ninth Circuit. The only glitch in the representation was the miscalculation of statute of limitations, and as far as there's an assertion that the client's misinformed. Well, he's misinforming him accidentally because he has miscalculated the limitations period, and there was no reason because he believed he was right that he would go back and look again, just based on receiving several letters by Mr. Kingdom. The fact is he miscalculated it, and I think as the court or one of the parties noted below, at least anecdotally, the error that was made was one that was made frequently in the early days of the ADPA, and that was that he thought it ran a year after the counsel frame denied review. What were the letters that were sent? What were they saying? Well, Mr. Kingdom's letters were inquiring about the status, and I don't recall the substance of all of them. But Mr. Grutsch's letters were basically each time an action was taken, whether he filed or whether he received an order. But it was kind of in those letters he was continually reminding him, was he not? Yes, he was, Your Honor, but the point I was trying to make earlier was despite those letters, counsel thought he had the right limitations period, and he's receiving those letters, but he still thinks that the deadline is I think it was August 24th, and in fact it wasn't. But despite receiving those letters, he thinks he has the right limitations period. So, of course, he's reading them, and he understands his client wants him to file on time, but he thinks he's going to. But that's kind of like Holland's case, is it not, where Holland was reminding his attorney all the time? Well, in each of the cases in which courts have found, like Holland or Spitzen, that there's been misconduct, that gave rise to equitable tolling, there has been correspondence like that. But what those cases have also included and what is absent here is a lack of correspondence from the defense attorney. Those cases involve clients that were basically hung out to dry. They didn't return calls. They didn't return letters. There's no application of either of those here. Obviously, the letters demonstrate the correspondence that was going on. But, yes, Your Honor, there is a similarity there, and with Spitzen. But in both of those cases, the attorney was completely unresponsive, and there was just no communication really whatsoever. The letters, one point I'd like to make also is this case, when the Ninth Circuit, when this court originally had this case, it ruled that Kingdom failed to show sufficient misconduct by his counsel that would warrant equitable tolling. It also found that he lacked diligence. Now, the diligence, I think, is off the table here. We don't have any dispute that he attempted to keep his case going. But this court has already ruled that the conduct that occurred did not arise to equitable tolling, and the letters that have been placed in only make that stronger. Previously, there was no showing of correspondence by counsel, and this court affirmed the decision on the ground that counsel's conduct did not give rise to equitable tolling. That position is only stronger now because counsel clearly kept him apprised at each stage, and the only glitch, the only error that counsel made was missing the statute of limitations period. What opportunities did he have to correct counsel's error in a timely fashion, if any? Well, there were a couple. As soon as the habeas was dismissed, the first habeas was dismissed on statute of limitations ground, counsel Gretsch advised Kingdom to seek new counsel, and that was proper. I think he did the right thing there. He even gave him a name, Kent Russell. Now, at that stage, Kingdom could have sought new counsel, could have acted in pro se. His options, whether through Gretsch or himself, were to file a motion then for reconsideration. Once it was in this court, there is a procedure by which you can ask this court to remand so that the district court can hear a motion for reconsideration, and neither of those were done. What happened was Kingdom simply waited, and once he lost, hired new counsel and started over. So he had a couple of options, go by himself or go with new counsel, and then once it was in the Ninth Circuit, he also had an option to bring it back here before this court decided. But he waited until this court had decided, and then he hired new counsel and tried to start over. And I submit that the case now is actually stronger in our favor based on the letters here. If the Court has no questions, I would submit. I don't think we have any more. Thank you very much for your presentation. Thank you. Mr. Auster, how would you like to do the last few seconds that you have here? Thank you, Your Honor. I know you're going to do a great job. Use them wisely. Your Honor, I refer again respectfully to 18-26, the pages in the record where the letters appear in the excerpt. I think that under Holland, the lawyer, in fact, did correspond with Collins was his name. He did correspond with Holland, not as much maybe as Mr. Gretsch, but he did. And he said, we know the statute of limitation period. Don't worry about it. That's what he said. So that wasn't really a distinction. I think counsel had an obligation to assure he was correct, even though he had made an initial error. I think the more times you're reminded by a client of the importance, I think he becomes egregious at a point when you don't respond to that. And finally, I think he's not choosing new counsel immediately on appeal. I don't know the reason for it, but it's certainly a difficult position for him to be in in every kind of possible way. The same counsel, Gretsch, did do the appeal. Thereafter, we referred the case to do the certiorari petition and discovered the evidence that had not been submitted and took it as quickly as we could after that. I think he's been diligent and that the door of the courthouse should open to him. Thank you very much. Thank you, sir. Thank you both for your presentations. Kingdom v. Lamarck is submitted.
judges: Hogan, Hug, Smith M.